IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
SAN ANTONIO DIVISION

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | § | |
| | § | |
| *Plaintiff,* | § | |
| | § | |
| vs. | § | SA-19-CR-00609-OLG |
| | § | |
| (1) LEONARDO TERRAZAS, | § | |
| | § | |
| *Defendant.* | § | |

## REPORT AND RECOMMENDATION
## OF UNITED STATES MAGISTRATE JUDGE

**To the Honorable Chief United States District Judge Orlando L. Garcia:**

This Report and Recommendation concerns Defendant's Motion to Suppress Evidence [#64]. Also before the Court are the Government's Response in Opposition to Defendant's Motion to Suppress Evidence [#67], Defendant's Reply [#73], and the parties' supplemental briefing [#84, #86, & #87]. The motion was referred to the undersigned on February 11, 2022. The undersigned has authority to enter this Report and Recommendation pursuant to 28 U.S.C. § 636(b)(1)(B).

The Court held a hearing on March 21, 2022, at which all parties appeared through counsel and presented argument on the Motion. At the hearing, the Government presented the testimony of officers involved in Defendant's arrest and introduced numerous exhibits into evidence. Terrazas also testified on his own behalf. At the conclusion of the hearing, the undersigned ordered supplemental briefing, which the undersigned has reviewed and considered. For the reasons set forth below, it is recommended that Defendant's Motion to Suppress Evidence [#64] be **DENIED**.

1

## I.  Background

Defendant Leonardo Terrazas was indicted on August 21, 2019, in a one-count indictment, for possession of a firearm by a felon in violation of 18 U.S.C. § 922(g)(1). (Indictment [#4] at 1.)  The indictment arises from the discovery of firearms in Terrazas's home on July 25, 2019, when Bexar County Sheriff's Office deputies executed a 2016 arrest warrant. Contrary to officer testimony at Terrazas's detention hearing, it is now undisputed that the officers executing the arrest warrant did not knock-and-announce their presence prior to breaching Terrazas's door.  Once in the home, the officers arrested Terrazas without incident. After he was taken into custody, the officers conducted a protective sweep of the home, recovering a firearm and suspected marijuana.  That a firearm and marijuana were discovered during the sweep was the probable cause cited by officers in their application for a search warrant for the home.  The search warrant was granted and executed later that same day, resulting in the recovery of eight additional firearms, two pieces of body armor, and ammunition.

Terrazas now moves to suppress all evidence recovered from his home that day, arguing that the knock-and-announce violation rendered the officer's entry into his home illegal, tainting both the protective sweep and the subsequent search warrant.  The Government argues that *Hudson v. Michigan*, 547 U.S. 586 (2006), in which the Supreme Court held that suppression is not an appropriate remedy for knock-and-announce violations that occur during the execution of search warrants, applies with equal force in the arrest-warrant context.  In the alternative, the Government argues that, even if officers knocked, and Terrazas surrendered at his doorstep, the officers would still have been entitled to conduct a protective sweep of the home in the interest of officer safety leading to the inevitable discovery of the firearm and marijuana.  Terrazas argues that *Hudson* is applicable in the search warrant context only and that the officers would

not have been justified in a protective sweep of the interior of his home had they properly executed the arrest warrant.

At the close of the hearing on March 21, 2022, the Court instructed the parties to provide supplemental briefing addressing whether, subsequent to *Hudson*, the exclusionary rule is an available remedy for knock-and-announce violations that occur in context of the execution of arrest warrants.  The parties were specifically instructed to address the circuit split created by the only two circuit decisions to squarely address the issue—*United States v. Pelletier*, 469 F.3d 194 (1st Cir. 2006), and *United States v. Weaver*, 808 F.3d 26 (D.C. Cir. 2015).

## II.  Legal Standard

The Fourth Amendment protects the "right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures."  U.S. Const. amend. IV. "[F]or Fourth Amendment purposes, an arrest warrant founded on probable cause implicitly carries with it the limited authority to enter a dwelling in which the suspect lives when there is reason to believe the suspect is within."  *Payton v. New York*, 445 U.S. 573, 603 (1980).  The requirement that officers knock-and-announce prior to entering a home to execute a warrant is part of the Fourth Amendment reasonableness inquiry.  *Wilson v. Arkansas*, 514 U.S. 927, 929 (1995).  The knock-and-announce rule requires that officers executing a warrant—either for search or arrest—knock on the door, announce both their identity and purpose, and wait a reasonable amount of time before forcibly entering.  *United States v. Banks*, 540 U.S. 31, 43 (2003).  Failure to comply with the knock-and-announce rule is a violation of the Fourth Amendment unless officers "have a reasonable suspicion that knocking and announcing their presence, under the particular circumstances, would be dangerous or futile, or that it would

inhibit the effective investigation of the crime by, for example, allowing the destruction of evidence." *Richards v. Wisconsin*, 520 U.S. 385, 394 (1997).

"Evidence obtained as a direct result of an unconstitutional search or seizure is plainly subject to exclusion." *Segura v. United States*, 468 U.S. 796, 804 (1984). Application of the exclusionary rule, however, requires that the deterrence benefits gained by exclusion outweigh the "substantial social costs." *Hudson*, 547 U.S. at 591. Additionally, the exclusionary rule is inapplicable where despite law enforcement's Fourth Amendment violation: (1) the evidence is obtained from a separate, independent source; (2) discovery of the evidence is inevitable, even without the unconstitutional search; or (3) there is not a sufficient causal relationship between the unlawful conduct of the officers and the discovery of evidence. *Utah v. Strieff*, 579 U.S. 232, 238 (2016) (internal citations omitted).

### III. Analysis

The Government concedes that the arresting officers violated the knock-and-announce rule when they arrested Terrazas on July 25, 2019. At issue is whether that violation amounts to a violation of Terrazas's Fourth Amendment rights, and if it does, whether that violation warrants suppression of the evidence seized following Terrazas's arrest. The undersigned finds that the failure of the arresting officers to officers to knock and announce prior to breaching Terrazas's home was not a violation of his constitutional rights because the officers had sufficient specific facts to create a reasonable suspicion that knocking would be dangerous. Further, even if Terrazas's Fourth Amendment rights had been violated by the failure to knock and announce, suppression of the evidence seized would not be an appropriate remedy in this case because an exception to the exclusionary rule applies.

A.    **The Court need not reach whether *Hudson's* holding applies in the arrest-warrant context.**

The Supreme Court, in *Hudson*, held that suppression is not an appropriate remedy for violations of the constitutional knock-and-announce rule in the search warrant context but has never squarely addressed whether it can be an appropriate remedy in the arrest warrant context. *See Hudson*, 547 U.S. at 594.   Only two circuits, the First Circuit and the D.C. Circuit, have addressed the issue, reaching opposite conclusions.   The First Circuit concluded, with little discussion, that the *Hudson* Court's reasoning applies with equal force in the arrest warrant context.   *See Pelletier*, 469 F.3d at 196.   Nine years later, the D.C. Circuit reached the opposite conclusion after analyzing the differences between the two types of warrants and the rights the knock-and-announce rule is intended to protect during the execution of search warrants as opposed to arrest warrants.   *Weaver*, 808 F.3d at 37–39.   The Fifth Circuit has not squarely addressed this issue, although it has interpreted *Hudson*.   *See United States v. Bruno*, 487 F.3d 304, 305 (5th Cir. 2007).   In *Bruno*, decided just one year after *Pelletier* and eight years before *Weaver*, the Fifth Circuit held that the reasoning of *Hudson* applies to violations of the federal *statutory* knock-and-announce rule during the execution of search warrants.   *Id.*   Although *Bruno* was addressing violations in the search warrant (not arrest warrant) context, and violations of the statutory (not constitutional) rule, the Fifth Circuit did cite *Pelletier* with approval.   *Id.* at 306. Terrazas contends that the D.C. Circuit's decision in *Weaver* is the better reasoned application of the *Hudson* rationale to the arrest warrant context.   The undersigned is inclined to agree, but as the Government points out, the Court need not reach that issue here because Terrazas's Fourth Amendment rights were not violated, and even if they were, an established exception to the exclusionary rule applies.

**B.      Terrazas's Fourth Amendment rights were not violated.**

Terrazas argues that the contraband seized in the search of his residence must be suppressed because the officers failed to knock and announce their presence prior to entering his home to execute the arrest warrant.  Terrazas contends that this violation of the knock-and-announce rule violated his Fourth Amendment right to be free from unreasonable search and seizure.  Terrazas also claims that but for this violation, the officers would not have observed either the suspected marijuana or the firearm that served as the basis for the warrant to search his home.  Therefore, he argues, the search warrant issued after his arrest lacked sufficient probable cause.

The Fourth Amendment reasonableness inquiry incorporates the common-law principle that officers must knock and announce before entering a residence to execute a warrant.  *Wilson*, 514 U.S. at 934.  This constitutional knock-and-announce requirement is not absolute; where law enforcement interests establish that unannounced entry is reasonable, such an entry is not constitutionally defective.  *Id.* at 936.  Unannounced entry is reasonable where sufficient facts, known to the officers at the time they executed the warrant, indicate that announcing the officers' presence would be "dangerous or futile, or that it would inhibit the effective investigation of the crime." *Richards*, 520 U.S. at 394.  It is the duty of the court "to determine whether the facts and circumstances of the particular entry justified dispensing with the knock-and-announce requirement," but the "showing is not high." *Id.* at 394–395.

In *Richards*, law enforcement officers applied for a no-knock search warrant for the defendant's hotel room, but the issuing state magistrate struck the no-knock authorization from the warrant.  *Id.* at 388.  The officers nevertheless proceeded to execute the warrant without announcing.  *Id.*  One of the officers dressed as a hotel maintenance man, knocked on the

defendant's door, and announced himself as a maintenance worker.  *Id.* at 388.  When the defendant opened the door to identify the individual, he saw a uniformed officer in the hall and slammed the door shut.  *Id.*  Officers then rammed the door and gained entry.  *Id.*  At no point prior to kicking and ramming the door did the officers announce that they were police present to execute a warrant.  *Id.*  The Supreme Court held that the information known to the officers at the time of execution—that the defendant's actions indicated he had recognized the officers as police and that he was believed to have drugs, which were easily disposable, in his possession—was sufficient to render the decision to enter the room unannounced reasonable and not a violation of defendant's Fourth Amendment rights.  *Id.* at 396.  The state magistrate's explicit deletion of the no-knock authorization from the warrant did not negate the reasonableness of the officers' decision at the time of execution.  *Id.* at 395.

The Fifth Circuit reached a similar conclusion in *United States v. Rodriguez*, 548 Fed. App'x. 230, 232 (5th Cir. 2013).  In *Rodriguez*, officers executed an arrest warrant without first announcing their presence.  *Id.* at 232.  Upon entering the bedroom of the residence, officers found defendant, a woman, and a child.  *Id.* at 232.  The officers also observed, in plain view, drug packaging materials, a firearm, and suspected narcotics.  *Id.*  The officers explained to the defendant that the items in plain view were sufficient probable cause to obtain a search warrant; defendant chose to consent to a search.  *Id.*  The defendant later moved to suppress all of the evidence arguing that the failure to knock-and-announce violated his Fourth Amendment rights and that the consent to search was not voluntary.  *Id.* at 233.  Relevant here, the Fifth Circuit found the following facts to exceed the level required to make the officer's decision to enter unannounced reasonable: knowledge that the defendant would be present, belief that he

possessed a weapon, belief that he was selling drugs, and knowledge of criminal history suggesting violence (an arrest for possession of a weapon). *Id.* at 234.

Here, the officers executing the arrest warrant also had sufficient information to make their decision to enter without knocking and announcing reasonable. Special Agent Wilkins and Deputy Flores, both present at Terrazas's home when the warrant was executed, testified that, prior to executing the arrest warrant, responding officers were aware of Terrazas's prior felony conviction for a violent crime and his outstanding arrest warrant for an alleged crime of family violence, and they also suspected weapons were in his home. (Tr. [#83] at 31, 33–34, 74.) Special Agent Wilkins also testified that Terrazas was a documented gang member and was suspected to be in possession of body armor and narcotics. (*Id.* at 31, 33–34.) The officers had sufficient specific facts based on their knowledge of the circumstances to determine that entering unannounced was justified to preserve officer safety, and therefore, their decision not to knock and announce was not a violation of Terrazas's Fourth Amendment rights. *See Bishop v. Arcuri*, 674 F.3d 456, 466 (5th Cir. 2012).

## C.    The inevitable-discovery-doctrine exception to the exclusionary rule applies.

Even if Terrazas were able to establish that the failure to knock and announce was unreasonable (and therefore a violation of this Fourth Amendment rights), the undersigned would still not recommend suppression of the seized evidence. The Court need not reach the question of whether the exclusionary rule could ever apply in the arrest warrant context because, here, the inevitable-discovery doctrine applies. "[T]he inevitable discovery doctrine allows for the admission of evidence that would have been discovered even without the unconstitutional source." *Strieff*, 579 U.S. at 238. The officers here were permitted to conduct a protective sweep of the residence after arresting Terrazas. Such a sweep would inevitably have led to the discovery of contraband.

8

"A 'protective sweep' is a quick and limited search of premises, incident to an arrest and conducted to protect the safety of police officers or others.  It is narrowly confined to a cursory visual inspection of those places in which a person might be hiding."  *Maryland v. Buie*, 494 U.S. 325, 327 (1990).  The standard for whether a protective sweep is justified is whether: (1) the law enforcement officers are present for a legitimate law enforcement purpose; (2) the sweep is supported by reasonable, articulable suspicion that the area to be swept harbors an individual posing a danger to those on the scene; (3) the sweep is no more than a cursory inspection of those spaces where a person may be found, it may not be a full search; and (4) the sweep lasts no longer than is necessary to dispel the reasonable suspicion of danger, or no longer than law enforcement is justified in remaining on the premises.  *United States v. Roberts*, 612 F.3d 306, 311 (5th Cir. 2010).  To determine whether a protective sweep is justified, the court looks to the totality of the circumstances, including the investigative tactics leading to the exigency that is alleged to necessitate the protective sweep.  *United States v. Silva*, 865 F.3d 238, 241–42 (5th Cir. 2017).  When the law enforcement conduct preceding the protective sweep is reasonable within the meaning of the Fourth Amendment, then the exigent circumstances were not impermissibly created by the officers.  *Kentucky v. King*, 563 U.S. 452, 462 (2011).

### i.    The protective sweep here was justified.

Terrazas argues that had the officers knocked and announced, he would have surrendered outside of his home, precluding any need for a protective sweep.  This assertion misunderstands the scope of permissible protective sweeps.  "The protective sweep doctrine may apply even if the arrest occurs outside the home."  *United States v. Maldonado*, 472 F.3d 388, 393 (5th Cir. 2006).  As the Government points out, even if the officers had knocked and announced their presence, and even if Terrazas had surrendered at his door, the officers would have been justified in conducting a protective sweep of Terrazas's home.

The search conducted by law enforcement satisfies each of the four criteria for a permissible protective sweep. First, the officers were present at Terrazas's home for a legitimate law enforcement purpose—the execution of an arrest warrant. Second, the decision to conduct a protective sweep was supported by reasonable, articulable suspicion that the area swept may harbor an individual that posed a danger to those on the scene. In *Maldonado*, officers, acting on an arrest warrant only, arrested both Maldonado and his co-conspirator *after* they exited Maldonado's trailer. *United States v. Maldonado*, 472 F.3d 388, 392 (5th Cir. 2006). Once the two were placed under arrest, officers asked Maldonado if anyone remained in the trailer. *Id.* Despite Maldonado's reply that no one else was in the trailer, the officers proceeded to conduct a protective sweep of the interior of the trailer, finding suspected marijuana in plain view inside a closet. *Id.* The Court determined that the protective sweep was justified because the officers were in an open area without cover, they had a reasonable expectation that weapons may be present due to the suspected drug activity, and additional accomplices may have been present in the home. *Id.* at 395.

The officers present at Terrazas's arrest testified to an even more extensive list of specific and articulable facts than were present in *Maldonado*. Special Agent Wilkens and Deputy Flores both testified that they were concerned with officer safety, aware of Terrazas's prior felony conviction for a violent crime and his outstanding arrest warrant for an alleged crime of family violence, and that they suspected weapons were in the home that could be accessible to others in the home. (Tr. [#83] at 31, 33–34, 74.) Wilkins also testified that Terrazas was a documented gang member and was suspected to be in possession of body armor and narcotics. (*Id.* at 31, 33–34.) Upon entry into the home, Flores heard what sounded like a large dog barking loudly. (*Id.* at 80.) He testified that upon hearing the barking he was concerned for the safety of the officers

and went directly to confirm that the dog was restrained.  *Id.*  These facts are more than sufficient to support the protective sweep law enforcement conducted after Terrazas's arrest and would have justified entering the home to conduct a sweep even if Terrazas had been arrested outside of his home, just as the officers' sweep was justified after arresting Maldonado outside his home.

Third, the sweep was not a full search; it was a cursory inspection of spaces where a person who posed a danger may be found.  Testimony at the hearing established that the residence is small, consisting of only three rooms.  (*Id.* at 19.)  In their sweep, officers found that each of those rooms were occupied.  The room where Terrazas was located also contained a female companion and her infant.  While conducting the protective sweep, officers saw a firearm in plain view in that room and the subsequent search found additional firearms in the same room. (*Id.* at 42, 83.)  Terrazas's brother was sleeping on a couch in the room that served as the kitchen and living area; officers later found a firearm in that couch.  (*Id.* at 42.)  The third room, occupied by Terrazas's mother, contained body armor, which was also found during the subsequent search.  (*Id.*)

Terrazas argues that the firearm found in his room was not in plain view, asserting that officers exceeded the scope of their protective sweep by opening the drawer.  (*Id.* at 55–56.) Terrazas acknowledged at the hearing that he did not see anyone else open the drawer containing the firearm and testified that ammunition, also illegal for him to possess due to his status as a felon, was in plain view on top of the dresser.  (*Id.* at 51–52.)  The undersigned finds Deputy Flores's testimony regarding the drawer credible.  Flores testified that he was positioned in the home keeping watch on Terrazas's companion and her baby.  (*Id.* at 82.)  He observed the companion repeatedly glancing at the top drawer of Terrazas's dresser.  (*Id.*)  The drawer was partially open, and the companion was not handcuffed (presumably to allow her to care for the

infant).  (*Id.* at 83.)   In the interest of officer safety, Flores walked toward the dresser and glanced through the opening where he could plainly see the grip of a pistol.  (*Id.*)   At that point, he removed the firearm from the residence.   (*Id.*)   Based on this credible testimony at the hearing, the undersigned concludes that the dresser drawer was partially open, and the grip of the pistol was in plain view.   Terrazas does not argue that the marijuana found on a chair in his room, which also formed the basis for the subsequent search warrant, was not in plain view.

Finally, the sweep lasted no longer than law enforcement was justified in remaining on the premises.   Testimony at the hearing established that the firearm and marijuana were discovered within minutes of breaching the door.   (*Id.* at 35–36.)   While typically occupants of a home are taken outside when an arrest warrant is executed, the officers testified that such an approach was not appropriate in this case.   Because the occupants included an infant and Terrazas's blind mother, it was determined that the occupants' safety was best served by remaining indoors.   (*Id.* at 82–83.)   Officers also testified that after addressing the needs of the other occupants, officers left the home and remained outside until the search warrant was obtained.   (*Id.* at 69.)   Given these unique circumstances, the officers were justified in remaining on the premises for the length of time that it took to determine that the occupants were not a threat and to explain to Terrazas's mother what was happening.

The undersigned concludes that the criteria for a protective sweep were met in this case such that even if Terrazas had been arrested outside of his front door, the officers would have been justified in conducting a protective sweep of the home.

### ii.    Law enforcement did not impermissibly create exigent circumstances.

Terrazas next argues that the officers' decision not to knock and announce was motivated by a desire to manufacture circumstances that would permit entry into his home without first

obtaining a search warrant.  Because, as explained above, the protective sweep was justified even if Terrazas had surrendered outside of his home, the decision not to knock and announce did not impermissibly create exigent circumstances justifying the sweep.

### IV.  Conclusion and Recommendation

Accordingly, having considered Defendant's motion, the response and reply thereto, the arguments of counsel at the hearing, the supplemental briefing, and the governing law, it is recommended that Defendant's Motion to Suppress Evidence [#64] be **DENIED**.

### V.  Instructions for Service and Notice of Right to Object/Appeal.

The United States District Clerk shall serve a copy of this report and recommendation on all parties by either (1) electronic transmittal to all parties represented by attorneys registered as a "filing user" with the clerk of court, or (2) by mailing a copy to those not registered by certified mail, return receipt requested.  Written objections to this report and recommendation must be filed **within fourteen (14) days** after being served with a copy of same, unless this time period is modified by the district court.  28 U.S.C. § 636(b)(1); FED. R. CIV. P. 72(b).  The party shall file the objections with the clerk of the court, and serve the objections on all other parties.  A party filing objections must specifically identify those findings, conclusions or recommendations to which objections are being made and the basis for such objections; the district court need not consider frivolous, conclusive or general objections.  A party's failure to file written objections to the proposed findings, conclusions and recommendations contained in this report shall bar the party from a *de novo* determination by the district court.  *Thomas v. Arn*, 474 U.S. 140, 149–52 (1985); *Acuña v. Brown & Root, Inc.,* 200 F.3d 335, 340 (5th Cir. 2000).  Additionally, failure to file timely written objections to the proposed findings, conclusions and recommendations contained in this report and recommendation shall bar the aggrieved party, except upon grounds

of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court. *Douglass v. United Servs. Auto. Ass'n*, 79 F.3d 1415, 1428–29 (5th Cir. 1996) (en banc).

       SIGNED this 23rd day of August, 2022.

_____
ELIZABETH S. ("BETSY") CHESTNEY
UNITED STATES MAGISTRATE JUDGE